### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY KELLEY, PAIGE KELLEY, JOSEPH R. SCHULLO AND MARSHALL MAUER, as Trustees of the SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE IL HEALTH AND WELFARE FUND, and as Trustees of the SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE IL PENSION FUND,

    Plaintiffs,

  v.

COURTYARD HEALTHCARE CENTER, LLC; BARAK BAVER; DAVID CHEPLOWITZ; and BERWYN SKILLED NURSING FACILITY, LLC,

    Defendants.

No. 21 C 6594

Judge Thomas M. Durkin

### MEMORANDUM OPINION AND ORDER

Plaintiffs are trustees for a labor union's pension and health and welfare funds. Defendant Courtyard Healthcare Center was an employer that was a party to a collective bargaining agreement that required it to make contributions to Plaintiffs' funds. Courtyard failed to make certain of those payments, and Plaintiffs seek to recoup the payments from Courtyard, two of Courtyard's former managers—Barak Baver and David Cheplowitz—and Berwyn Skilled Nursing Facility, the entity that purchased Courtyard's assets. Courtyard, Baver, and Berwyn have moved to dismiss

some of the claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Those motions are granted in part and denied in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

---

[1] Plaintiffs voluntarily dismissed their claims against Cheplowitz. *See* R. 76.

## Background

Courtyard operated a nursing home facility until it sold it to Berwyn on January 31, 2019 for $7.25 million. Courtyard sold the facility to satisfy its $16 million debt to secured creditors. According to a letter defendant Baver addressed to "vendors" two weeks after the closing, the purchase price was insufficient to even cover the debt to secured creditors, so there were no funds left "to pay trade creditors or vendors." R. 68-1 at 39.[2] Apparently, "vendors" included the Plaintiffs' funds, because Plaintiffs allege they received the letter too.

Plaintiffs allege that the contracts memorializing the sale falsely represented that Courtyard had no obligations to any ERISA plan such as Plaintiffs' funds. Plaintiffs allege that Courtyard's managers, defendants Baver and Cheplowitz knew that Courtyard owed money to the funds. Plaintiffs primary support for this allegation is the fact that Baver sent them the "vendor" letter acknowledging that they wouldn't be paid what they were owed. *See* R. 68-1 at 39 ("I am sorry that you are left with account payable that will go unpaid."); *see also* R. 56 ¶ 44.

When Berwyn took over the facility, the facility remained materially the same. Notably, Berwyn kept the employees and began making payments to the Plaintiffs' funds. *See* R. 68-1 ¶ 5.

Plaintiffs do not allege that they demanded payment from Courtyard prior to the sale to Berwyn. Plaintiffs filed this case in December 2021, nearly three years

---

[2] The letter isn't attached to the complaint, but it is referenced in the complaint, and Plaintiffs attached it to their brief. Thus, it is properly considered on this motion to dismiss.

3

after the sale. The Court ordered an audit earlier in the case, which revealed that Courtyard owes Plaintiffs' funds $132,401.86 in back-payments, interest, fees, and liquidated damages. *See* R. 56 ¶ 30 (table).

The complaint includes four counts: Count I for an audit, which, as mentioned, the Court already ordered; and Count II for payment from Courtyard. Those Counts are not at issue on this motion.

Counts III and IV are the subject of this motion. Count III is a claim for violation of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1, against Baver and Berwyn. That claim implicates Courtyard because it seeks to void part of the transfer of funds Courtyard made to its secured creditors as part of the sale to Berwyn. Count IV is a claim for successor liability against Berwyn.

## Analysis

### I. Fraudulent Transfer

The Illinois Uniform Fraudulent Transfer Act prohibits asset transfers by debtors intended "to hinder, delay, or defraud any creditor of the debtor." *See* 740 ILCS 160/5(a)(1). This includes circumstances in which the debtor knows that a transfer is for insufficient value and will leave the debtor with assets insufficient to pay the creditor. *Id.* § 160/5(a)(2).

The Act also provides a cause of action for a creditor (here, Plaintiffs' funds) seeking to obtain:

> (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in

accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

740 ILCS 160/8.

The available actions under the Act are against the "debtor," the "transferee," or against "the asset" directly. Courtyard is allegedly the debtor and transferee, but Courtyard is also allegedly directly liable for the payments to the funds as alleged in Count II, so the Act is a redundant claim against Courtyard. Berwyn is not alleged to be the debtor or a transferee of the purchase price. Indeed, Berwyn was the transferor of those funds. So Plaintiffs cannot state a claim against Berwyn under the Act, and Count III against Berwyn must be dismissed.

Plaintiffs imply that Baver is a transferee by alleging that he "transferred the Purchase Price money . . . . away from Courtyard . . . . after [he] received it." R. 56 ¶¶ 46-47. But this allegation concedes that the purchase funds were transferred to Courtyard, not Baver. Plaintiffs allege that Baver made the decision to use the money to pay Courtyard's secured creditors. But Plaintiffs do not argue that this makes Baver a "transferee" under the terms of the Act. Plaintiff allege that the purchase price money was transferred to Courtyard, not Baver. And Plaintiffs make no allegation that Baver is Courtyard's alter ego. If Baver isn't a transferee or a debtor, he cannot be liable under the Act, and Count III against him must be dismissed.

5

## II.    Successor Liability

Plaintiffs allege that Berwyn is liable for Courtyard's back payments to the Plaintiffs' funds as a successor in interest. The Seventh Circuit has explained that successor liability is appropriate when "(1) the successor had notice of the claim before the acquisition; and (2) there was "substantial continuity in the operation of the business before and after the sale." *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995); *see also Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1327 (7th Cir. 1990).

Berwyn does not argue that Plaintiffs have failed to allege that Berwyn maintained the continuity of Courtyard's operations. Instead, it argues that Plaintiffs have failed to plausibly allege that Berwyn had notice that Courtyard had not satisfied its obligations to the Plaintiffs' funds. According to Berwyn, merely alleging lack of notice, as Plaintiffs have done here, *see* R. 56 ¶ 59, is insufficient to state a claim. Berwyn argues that this allegation is particularly insufficient here, because, "[a]ccording to the Funds' own allegations, the alleged delinquency was not even discovered until the Funds completed their audit in July 2022." R. 61 at 5. But Berwyn makes this argument based on the fact that Plaintiffs note that the audit completed in this case "revealed" or "demonstrated" the alleged delinquency. These allegations do not mean that Plaintiffs were unaware of the delinquency until the audit was complete. Indeed, it would make little sense for Plaintiffs to file this case unless they at least suspected that Courtyard's obligations were unpaid.

6

Nevertheless, the implication of Berwyn's argument is that Plaintiffs did not learn of the delinquency until sometime after Berwyn purchased the facility from Courtyard. And if Plaintiffs did not know about the delinquency, how could Berwyn have known. But this analysis misses the point.

It is certainly plausible that Courtyard knew that it hadn't paid its obligations to the funds, even if the funds hadn't realized it yet. And if Courtyard knew, it is plausible and likely that Berwyn also knew, despite the representations to the contrary in the deal documents. Clearly, Berwyn knew that the employees were union members, because Berwyn started making payments to the Plaintiffs' funds upon taking possession of the facility. Further, it is likely that Berwyn knew that Courtyard was selling the facility because of its debt to secured creditors. Knowledge of Courtyard's debts and obligations, including its obligations to Plaintiffs' funds, would have been a part of the transaction "under normal due diligence principles." *Sallis v. Portfolio Ambassador E., LLC*, 2008 WL 4425876, at *5 (N.D. Ill. Sept. 25, 2008). Berwyn argues that it is not required to have conducted due diligence in order to avoid successor liability, and has cited case law to that effect. But that isn't the point. Rather, it is plausible that Berwyn actually conducted due diligence which would have revealed Courtyard's unpaid obligations to the funds. Discovery is necessary to determine whether that occurred.

## Conclusion

Therefore, the motions [58] [60] are granted in part and denied in part. Berwyn's motion is granted in that Berwyn is dismissed from Count III. Berwyn's

motion is denied with respect to Count IV. Courtyard's and Baver's motion [58] is granted in that Baver is dismissed from Count III. The motion is denied with respect to Courtyard. The dismissals are without prejudice to repleading if Plaintiffs believe they can cure the allegations.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: December 19, 2022