UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY KELLEY, *et al.*, <br>     Plaintiffs <br><br> v. <br><br> COURTYARD HEALTHCARE CENTER, LLC, <br>     Defendant | No. 21 CV 6594 <br><br> Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

Defendant Courtyard Healthcare Center, LLC ("Courtyard"), a defunct nursing home operator, failed to contribute to its employees' benefit funds as required by a collective bargaining agreement. The plaintiffs, the funds' trustees, brought this suit under the Employee Retirement Income Security Act (ERISA) of 1974, *as amended*, 29 U.S.C. § 1001 *et. seq.*, against Courtyard, its successor entity, and its former managers to recover unpaid contributions and related expenses. (*See* R. 1.)[1] After settling with all defendants other than Courtyard, the plaintiffs now move for summary judgment on their remaining claims. (R. 96.) For the reasons that follow, the Court grants their motion.

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions,[2] the materials cited therein, and other aspects of the record in this case.

The plaintiffs are trustees for the Service Employees International Union Healthcare Il Health and Welfare Fund (the "Welfare Fund"), and the Service Employees International Union Healthcare Il Pension Fund (the "Pension Fund" and, together with the Welfare Fund, the "Funds"). The Funds are multiemployer benefit plans under §§ 3(3) and 3(37) of ERISA that provide retirement and welfare benefits to thousands of employees of nursing homes in Illinois. (Def.'s Resp. to Pl.'s SOF ¶¶ 1–3); 29 U.S.C.A. §§ 1002(3), (37). They rely on monthly contributions from employers to finance benefit payments. (*Id.* ¶ 7.) Because employers self-report the amount of their monthly contributions, the plaintiffs audit the employers from time to time. (*Id.* ¶¶ 7–8.)

Courtyard was formerly an Illinois limited liability company and contributor to the Funds. (*Id.* ¶¶ 4–6.) Prior to its dissolution in December 2021, Courtyard operated a nursing home facility in Berwyn, Illinois. (*Id.* ¶ 5.) The company made monthly contributions to the Funds as a signatory to a collective bargaining agreement between the Berwyn facility and its employees (the "CBA"). (*Id.* ¶ 6.)

---

[2] *See* Plaintiffs' Local Rule 56.1(A)(2) Statement of Material Facts ("Pl.'s SOF") (R. 97"); Defendant Courtyard Health Center, LLC's Response to Plaintiffs' Local Rule 56.1(A)(2) Statement of Material Facts ("Def.'s Resp. to Pl.'s SOF") (R. 102 at 1–9; Defendant Courtyard Health Center, LLC's Statement of Additional Facts ("Def.'s SOAF") (R. 102 at 9–10); Plaintiffs' Response to Defendant's Statement of Additional Facts ("Pl.'s Resp. to Def.'s SOAF") (R. 104); Plaintiffs' Supplemental Local Rule 56.1 Statement ("Pl.'s Supp.") (R. 106); Defendant's Response to Plaintiffs' Supplemental Statement ("Def.'s Resp. to Pl.'s Supp.") (R. 107.)

2

In January of 2019, Courtyard sold the Berwyn facility to another entity, Berwyn Skilled Nursing Facility, LLC, d/b/a the Grove of Berwyn ("Grove of Berwyn"). (Pl.'s Resp. to Def.'s SOF ¶ 17.) Although the plaintiffs were aware of the sale, they did not demand that Courtyard pay the outstanding contributions prior to closing. (*Id.* ¶¶ 3–4.) However, over two years later, on October 6, 2021, the Funds requested an "exit audit" to identify any remaining contributions that might be due for the period beginning in April 2013 through January 2019. (Def.'s Resp. to Pl.'s SOF ¶ 18; *see also* R. 97-5 ¶ 3.)

On September 21, 2021, Courtyard declined to produce the records needed to conduct the audit and informed the plaintiffs that they were represented by counsel. (Def.'s Resp. to Pl.'s SOF ¶ 20.) On November 18, 2021, Courtyard's attorney requested further information concerning the audit and indicated that Courtyard would produce the requested documents by November 25, 2021. (*Id.* ¶ 21; R. 56 at 14.) The Funds provided the information, but Courtyard failed to produce the documents as requested. (Def.'s Resp. to Pl.'s SOF ¶¶ 22–24.)

On December 2, 2021, the plaintiffs sent Courtyard a final demand letter requesting the documents needed to conduct an audit. (*Id.* ¶ 25.) One week later, the plaintiffs filed this lawsuit against Courtyard and Grove of Berwyn, alleging that Courtyard had not produced the necessary documents. (R. 1.) After this lawsuit was filed, Courtyard apparently dissolved. (*See* R. 104-2.)

Despite Courtyard's apparent dissolution, the lawsuit lived on and proceeded to discovery. The plaintiffs requested that Courtyard produce, among other things,

3

its payroll and earnings records, account statements, tax returns, and "all documents concerning the Funds' attempts to conduct an audit of Courtyard's contributions to the Funds." (R. 21-1 at 7–8.) Courtyard failed to produce the requested documents, and the Funds moved to compel production. (Def.'s Resp. to Pl.'s SOAF ¶ 27; R. 21.) The Court granted the motion, (R. 23), and Courtyard eventually produced its payroll records. (Def.'s Resp. to Pl.'s SOF ¶ 27.) Following discovery, the plaintiffs settled their claims against Grove of Berwyn and the Court dismissed them with prejudice. (R. 91.)[3]

The Funds hired an independent auditor to review the documents that Courtyard produced. The auditor completed a report showing the amount of unpaid contributions for the period of January 1, 2017 through January 31, 2019, as well as interest, liquidated damages, and fees in accordance with the Funds' governing documents and collection procedures. (*Id.* ¶ 28.) The report revealed the following delinquencies and related costs:

| Category | Welfare Fund | Pension Fund |
|---|---|---|
| Contributions | $41,610.00 | $21,227.65 |
| Interest | $27,885.90 | $12,760.77 |
| Liquidated Damages | $8,322.00 | $4,245.54 |
| Audit Fee | $8,175.00 | $8,175.00 |
| **Total Delinquency** | **$85,992.90** | **$46,408.96** |

(*Id.* ¶ 29; R. 97-6 ¶¶ 4–6; 97-7.)

---

[3] The terms of the settlement do not appear to be part of the record in this case.

4

The plaintiffs served Courtyard with a copy of the audit report on September 16, 2022 and simultaneously served document requests asking Courtyard to identify any documents contradicting the report's findings. (R. 97-5 ¶ 9.) Between January and April 2023, the plaintiffs' counsel requested on at least six separate occasions that Courtyard identify documents contradicting the audit report or to otherwise dispute the findings in the report. (*Id.* ¶¶ 11–17.) Notwithstanding these requests, Courtyard failed to identify any documents contradicting the findings set forth in the report. (*Id.* ¶ 18.) The plaintiffs now move for summary judgment, seeking payment for the assessed delinquencies and costs at the rate set forth in the audit report, as well as reasonable attorneys' fees. (R. 96.)

## LEGAL STANDARD

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016) (citing Fed R. Civ. P. 56(a)). When considering a motion for summary judgment, the Court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Emps. Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 317 (1986). To survive a summary judgment challenge, the non-moving party must point to evidence of specific facts demonstrating a genuine issue for trial on any issue for

5

which it bears the ultimate burden of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. LOCAL RULE 56.1

Before addressing the merits of the plaintiffs' motion for summary judgment, the Court first considers their request to deem certain of Courtyard's responses to their Rule 56.1 Statement of Material Facts admitted for failure to comply with Local Rule 56.1. (*See* R. 103 at 2–4.)

"Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law . . . district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011). Local Rule 56.1 requires nonmovants to submit a response to the moving party's statement of facts that squarely admits or denies the facts asserted by the moving party. N.D. Ill. L.R. 56(a)(1), (d). The Court may disregard any asserted fact that is not supported with a citation to evidence in the record. *Id.* 56(d)(2). Moreover, a party's failure to admit or deny facts contained in a Local Rule 56.1 statement— including by stating that the party lacks "sufficient information" to admit or deny the facts asserted—is ground for deeming the facts in question admitted. *Fujifilm N. Am. Corp. v. D/C Exp. & Domestic Packing, Inc.*, 339 F. Supp. 3d 790, 792 n.2 (N.D. Ill. 2018).

Several of Courtyard's responses to the plaintiffs' Statement of Material Facts are facially insufficient under Local Rule 56.1. In particular:

- Paragraphs 3, 7–16, 19–21, and 28 of Courtyard's response state that Courtyard "lacks sufficient information" to admit or deny the asserted facts;

- Paragraphs 29 and 31 of Courtyard's response fail to admit or deny the corresponding statements of fact, but instead state that Courtyard "has been unable to verify the accuracy of" the asserted facts; and

- Paragraphs 4, 5, and 32 of Courtyard's response deny the stated facts without citing any supporting evidentiary material.

The Court agrees that these responses do not comply with Local Rule 56.1. As a result, Courtyard's responses to these facts are deemed admitted for purposes of this motion. *Fujifilm,* 339 F. Supp. 3d at 792 n.2.

The plaintiffs also request that the Court strike certain portions of Courtyard's Statement of Additional Facts and exhibits attached to Courtyard's response brief. (R. 103 at 4.) The Court declines to strike these statements and exhibits because, for the reasons set forth below, even if the statements and exhibits are considered, they are insufficient to create a genuine issue of material fact precluding summary judgment. *Stevo,* 662 F.3d at 867 ("[T]he decision whether to apply the [local] rule strictly or to overlook any transgression is one left to the district court's discretion.") (citation omitted).

## II. PLAINTIFFS' ERISA CLAIMS

The Court next turns to the merits of the plaintiffs' motion for summary judgment. Count I of the second amended complaint seeks an award of attorneys' fees and costs incurred by the Funds in auditing Courtyard under 29 U.S.C. § 1132(g). (R. 56 at 3–6.) Similarly, Count II seeks to hold Courtyard liable for unpaid contributions

7

under 29 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2)(A); and also seeks interest, liquidated damages, audit costs, and reasonable attorneys' fees under 29 U.S.C. § 1132(g)(2)(B)–(E). Because an award of attorneys' fees and costs is mandatory under § 1132(g)(2) if the Court awards "a judgment in favor of the plan," the Court first considers whether Courtyard is liable for the unpaid contributions before addressing their request for attorneys' fees and costs.

### A. Liability for Unpaid Contributions

Section 1145 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement" is required to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 1132(g)(2)(A) provides that if a trustee of a multiemployer plan prevails in a recovery action brought under § 1145, they are entitled to recover the amount of the unpaid contributions owed by the employer. "[O]nce the Funds present[] [an] audit report and establish[] an absence of company records contradicting [the report], the burden is on [the employer] to establish a genuine issue of material fact barring summary judgment." *Laborers' Pension Fund v. RES Env't. Servs.*, 377 F.3d 735, 739 (7th Cir. 2004). This burden-shifting presumption applies to the amount of contributions owed and not to the threshold question of liability. *See Trs. of N.E.C.A.-IBEW Loc. 176 Health, Welfare, Pension, Vacation & Training Tr. Funds v. New Frontier Elec. Constr. Inc.*, No. 18 C 1737, 2021 WL 4146919, at *6 (N.D. Ill. Sept. 13, 2021).

8

Here, Courtyard does not dispute that it failed to make contributions to the Funds between January 2017 and January 2019 as required by the CBA. (*See generally* Def.'s Resp. to Pl.'s SOF.) The only remaining questions are whether the plaintiffs have established an absence of company records entitling them to the benefit of the burden-shifting presumption as to amounts owed, and whether Courtyard can rebut it.

The plaintiffs have established an absence of contradictory company records entitling them to the benefit of the burden-shifting presumption. ERISA requires employers to maintain employee records "sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). Courtyard failed to produce these records in response to the plaintiffs' initial audit request, and the plaintiffs needed to file suit in order to obtain the files. (Def.'s Resp. to Pl.'s SOF ¶ 32.) Even after the plaintiffs filed suit, Courtyard did not immediately produce employee records. It was only after the Court granted the plaintiffs' motion to compel production of "all documents" relevant to the audit that Courtyard produced its payroll records and represented that it had no other relevant documents in its possession. (R. 97-4 ¶¶ 6–7.) The plaintiffs' auditor relied on the documents to calculate the deficiencies owed. (Def.'s Resp. to Pl.'s SOF ¶¶ 27–29.) Because the plaintiffs compelled production of "all documents" relevant to the exit audit, and because Courtyard failed to identify any contradictory company records despite being given numerous opportunities to do so, (*see* R. 97-5), the Court concludes that the findings in the audit report are entitled to a presumption of accuracy.

9

Not only does the burden-shifting presumption apply in this case, but Courtyard has failed to rebut it. Again, despite having received the auditor's report (*see* R. 97-7) and having had multiple opportunities to dispute the report's calculations, Courtyard failed to identify any deficiencies. (*See* R. 97-5 ¶¶ 15–18.) Courts have held that defendants in § 1145 actions failed to rebut the presumption on records far more fulsome than the one here. See *Unite Here Health v. Pittsburgh Athletic Ass'n*, No. 12 C 6015, 2014 WL 1228443, at *5 (N.D. Ill. Mar. 25, 2014) (finding that the burden shifting rule applied notwithstanding defendant company's submission of general payment records and affidavit from its general manager that purportedly contradicted the auditor's findings).

Courtyard argues that there is a factual dispute precluding summary judgment because it was not able to verify the accuracy of the auditor's report. Instead of contesting the findings in the report, it blames the plaintiffs for failing to produce the auditor's workpapers during discovery. (Def.'s Resp. to Pl.'s SOF ¶¶ 29, 31.) But Courtyard did not file any motion to compel production of these documents. It cannot use its own lack of diligence to escape summary judgment. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 877 (7th Cir. 2021) (affirming summary judgment based on plaintiffs' failure to compel production of documents). In sum, the Court concludes that there is no genuinely disputed material fact as to either liability or the amount of contribution owed. *Bd. of Trs. of Plumbers' Loc. Union No. 93 U.A. v. Bos. Plumbing, Inc.*, No. 10 C 7856, 2012 WL 3758032, at *7 (N.D. Ill.

Aug. 28, 2012) (granting summary judgment on § 1145 claim where defendants "provided no indication that plaintiffs' calculations [were] incorrect").

### 1. Laches

Courtyard next argues that, even if it is liable for the full amount of delinquent contributions set forth in the audit report, the plaintiffs' claim is barred by the doctrine of laches. Laches is an affirmative defense on which the asserting party bears the burden of proof. *Safety Socket LLC v. Relli Tech., Inc.*, No. 18 C 6670, 2023 WL 3455117, at *3 (N.D. Ill. May 15, 2023) (citing *Bauer v. J.B. Hunt Trans., Inc.*, 150 F.3d 759, 763 (7th Cir. 1998)). It requires proof of two elements: (1) unreasonable delay and (2) prejudice to the other party. *Teamster & Emps. Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002). "[A] district court's decision to apply the doctrine of laches is discretionary." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (citation omitted). The viability of a laches defense may be determined at summary judgment where the facts necessary for determining whether the defendant suffered material prejudice are not genuinely disputed. *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 733 (7th Cir. 2003).[4]

---

[4] The plaintiffs argue that evidence of a "writing" is required to demonstrate laches in an ERISA action. (R. 103 at 9–10.) But this requirement comes from the doctrine of equitable estoppel—not laches. *Coker v. Trans. World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999) (discussing the writing requirement in the context of equitable estoppel). Although the plaintiffs cite *Gorman Brothers* for the proposition that "laches and equitable estoppel are interchangeable," (*see* R. 103 at 9 (quoting *Gorman Bros.* 283 F.3d at 877)), district courts in the wake of *Gorman Brothers* have continued to distinguish between equitable estoppel and laches and have not applied the writing requirement to the latter. *See, e.g.*, *Chi. Reg'l Council of Carpenters Pension Fund v. Carlson Constructors Corp.*, No. 17 C 4242, 2022 WL 874608, at *19 (N.D. Ill. Mar. 24, 2022). Ultimately, whether or not *Gorman Brothers* can be read as heightening the requirements for a laches defense in the ERISA context is beside the point since Courtyard has failed to meet is burden of proof as to the traditional elements of a laches defense.

11

The Court first considers whether Courtyard has met its burden of demonstrating unreasonable delay. The applicable statute of limitations for an action to recover delinquent contributions under ERISA is ten years, *see, e.g.*, *Laborers' Pension Fund v. Glendale Assoc., Ltd.*, No. 10 C 7371, 2011 WL 2976792, at *5 (N.D. Ill. July 14, 2011), and there is a "presumption against the use of laches to shorten the statute of limitations." *Gorman Bros.*, 283 F.3d at 880. The plaintiffs' audit report applies to contributions that began coming due as early as 2017 and the action was filed in 2021, less than four years later. Because the period for which the plaintiffs are seeking unpaid contributions falls within the statutory limitations period, the presumption against laches applies.

Notwithstanding this presumption, Courtyard argues (1) that the CBA requires the plaintiffs to audit Courtyard annually, which they failed to do, and (2) that conducting the exit audit four years after the contributions became due and two years after the sale of substantially all of the defendant's assets was otherwise unreasonable.

In support of its first argument, Courtyard cites Article 18.2 of the CBA as evidence that the plaintiffs were obligated to perform annual audits. The relevant provision reads:

> Annually, on or about the anniversary of this Agreement, or more frequently if requested by the trustees or by either of the negotiating committees, the trustees will meet with such committees, along with appropriate consultants and advisors, to review financial reports, statements, audits, and data, and other meaningful information and reports to enable the negotiating committees to determine whether or not the level of contribution to the Fund provided in this

> Agreement can be reduced or has to be increased in order to maintain the currently existing level of benefits on a sound actuarial basis.

(R. 19-1 ("CBA") at Art. 18.2). Courtyard argues that this section imposes an affirmative obligation on the plaintiffs to audit contributing employers like Courtyard at least once a year. (R. 101 at 4–5.)

The Court disagrees. "[C]ollective-bargaining agreements, including those establishing ERISA plans" must be interpreted "according to ordinary principles of contract law." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 427 (2015). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id.* (citation omitted).

The plain language of Article 18.2 does not impose an obligation on the Funds to conduct annual audits, as Courtyard asserts. The modifier "annually" plainly refers to the phrase "will meet;" providing how often the trustees and negotiating committees (along with their consultants and advisors) are required to assemble to evaluate the level of contributions to the Funds. Courtyard's preferred reading of the provision, in which "annually" imposes an affirmative obligation on the trustees to conduct yearly audits, does not make sense, as it would impose indefinite obligations on the Funds to produce "statements," "other meaningful information," and "reports" each year, without any guidance on what these documents must contain. The provision provides that the Funds' personnel are obligated to meet annually and evaluate whatever reports, statements or audits *might* be available in a given calendar year. In sum, the Court rejects Courtyard's argument that Article 18.2 of the CBA supports their laches defense.

13

Courtyard next argues that, even absent an express requirement to conduct annual audits, the plaintiffs' delay in conducting the exit audit was unreasonable. (R. 101 at 4–5.) This argument also fails. Courtyard offers no testimony or evidence to suggest that the plaintiffs' delay in conducting an exit audit was not reasonable. (*See generally* Def.'s Resp. to Pl.'s SOF; Pl.'s Resp. to Def.'s SOAF.) Courtyard has therefore failed to meet its burden of proof as to this aspect of its defense. Indeed, in other § 1145 cases in this District, courts have concluded that auditing an employer as infrequently as every three years in the absence of a specific requirement to the contrary is "industry standard." *Trs. of Chi. Plastering Inst. Pension Fund v. R.G. Const. Servs., Inc.*, No. 05 C 5669, 2009 WL 1733036, at *16 (N.D. Ill. June 16, 2009). The Court cannot conclude that the plaintiffs' delay in conducting an audit was unreasonable.

Even if Courtyard could demonstrate unreasonable delay, however, it would also fail to demonstrate the second element of its laches defense: prejudice. Courtyard suggests that it was prejudiced because it dissolved prior to receiving the audit report. But Courtyard was on notice of the plaintiffs' audit request at the time of its dissolution, and it cites no case law for the proposition that the dissolution or winding down of a company constitutes prejudice for the purposes of a laches defense. (*See generally* R. 101 at 5–6.) If anything, authority seems to point in the opposite direction. *Cf. Lumpkin v. Envirodyne Indus., Inc.*, 159 B.R. 814, 817 (N.D. Ill. 1993) (rejecting bankrupt company's laches defense to an ERISA action based on failure to demonstrate prejudice). Courtyard also fails to identify any actions that it could have

14

taken during the two-year interval between the sale of the Berwyn facility to Grove of Berwyn and the plaintiffs' initial audit request to avoid prejudice other than paying the amounts that it owed. *Bd. of Trs. of the Pipe Fitters Ret. Fund, Local 597 v. Am. Weathermakers, Inc.*, 150 F. Supp. 3d 897, 908-09 (N.D. Ill. 2015) (finding no prejudice to the employer even if there had been unreasonable delay by the pension fund because "the only steps Defendants could have taken . . . would have been to make the contributions now in dispute."). The Court concludes that the plaintiffs' claim is not barred by the doctrine of laches.

### 2. Setoff

Finally, Courtyard argues that it is entitled to offset the amount of contributions it owes against amounts that Grove of Berwyn already paid as part of its settlement with the plaintiffs. (R. 101 at 6.) "Because a setoff is intended to prevent double recovery, a [] setoff may be awarded only where the settlement covers the same injury as that for which the non-settling defendant was found responsible." *Fed. Deposit Ins. Corp. v. Chi. Title Ins. Co.*, 12 F.4th 676, 690 (7th Cir. 2021). "A [] setoff may not be awarded where a settlement covers multiple injuries, for at least one of which both defendants are jointly responsible, but for at least one of which the non-settling defendant is not responsible." *Id.* Most relevant to this case, the non-settling defendant bears the burden of allocating settlement proceeds between the defendants. *Id.*

Courtyard's argument that it is entitled to a setoff fails for multiple reasons. First, Courtyard's request for a setoff in response to the plaintiffs' motion for summary judgment is procedurally improper. Courtyard failed to raise setoff at any

15

previous stage of the litigation and did not plead setoff as a counterclaim or affirmative defense. (*See* R. 97-1 (Courtyard's Answer to the Second Amended Complaint).) "[E]ven in a system of notice pleading a party must take some step to make setoff an issue." *Reger v. Ariz. RV Ctrs., LLC*, 2018 WL 2434040, at *7 (N.D. Ind. May 30, 2018) (quoting *Beloit Corp. v. C3 Datatec, Inc.*, 78 F.3d 586 (7th Cir. 1996)).

Procedural flaws aside, Courtyard has also failed to meet its burden of proof. It presents no evidence that the amounts that Grove of Berwyn paid the plaintiffs to settle their claims are related to the same injuries for which the plaintiffs are currently seeking redress. *See Fed. Deposit Ins. Corp.*, 12 F.4th at 690. Grove of Berwyn has been dismissed from this case with prejudice, (*see* R. 46; R. 91), and the specific terms of its settlement with the plaintiffs are not part of the record. Because Courtyard presents no evidence of payment amounts or their proper allocation, the Court denies Courtyard's request for a setoff. For the avoidance of doubt, this denial shall not be construed to prevent Courtyard from asserting a setoff in any future proceedings.

In short, the Court concludes that Courtyard is liable under § 1132(g)(2)(A) for the full amount of unpaid contributions assessed in the plaintiffs' audit report, and that the plaintiffs' claim is not barred by the doctrine of laches. Accordingly, the Court grants summary judgment for the plaintiffs on their claim for unpaid contributions and awards them the amount of unpaid contributions assessed in the audit report.

### B. Liability for Interest, Liquidated Damages, Audit Fees, and Attorneys' Fees

The Court next turns to the plaintiffs' request for interest on the unpaid contributions, liquidated damages, audit fees, and attorneys' fees. If an employer fails to make benefit contributions and a plan's fiduciary successfully files suit, then a plan may collect, in addition to the unpaid contributions, interest on the unpaid contributions, liquidated damages (capped at 20% of the unpaid contributions or the total amount of interest, whichever is higher), reasonable attorney's fees and costs of the action, and such other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2)(B)–(E).

### 1. Interest, Liquidated Damages, and Audit Fees

The Court first addresses the plaintiffs' entitlement to interest, liquidated damages, and audit fees. In support of their motion, the plaintiffs submitted the Funds' collection procedures, which assess interest on delinquent contributions at a rate of 1% per month (compounded monthly) and liquidated damages at an initial rate of 10% of the unpaid contributions, which increases to 20% if the Funds file suit against an employer. (R. 106-3 ¶ 106-3; R. 106-4 ¶ 5.) The Funds' governing documents also provide that an employer who refuses to submit records is liable for the cost of any audit fee. (R. 106-3 ¶ 9; R. 106-4 ¶ 9.) Courtyard does not dispute that the collection procedures provide for interest and liquidated damages at the specified rates, and it concedes that the Funds informed Courtyard that it intended to rely upon the collection procedures in its initial Rule 26(a)(1) disclosures. (*See* R. 107 ¶ 10; R. 106-6 at 3.) Nor has Courtyard produced any document or identified any dispute

17

as to the amounts of interest, liquidated damages, and audit fees set forth in the audit report.

Accordingly, the Court grants summary judgment as to the plaintiffs' entitlement to interest, liquidated damages, and audit fees at the rates specified in the Funds' governing documents and the amounts specified in the audit report. *See Hancock v. Ill. Cent. Sweeping LLC*, 73 F. Supp. 3d 932, 939 (N.D. Ill. 2014) (granting summary judgment for trustees on unpaid interest and liquidated damages at the rates specified in fund's collection procedures).

### 2. Attorneys' Fees

Lastly, the Court turns to the plaintiffs' request for attorneys' fees. The plaintiffs are entitled to reasonable attorneys' fees under the plain language of the CBA and the Trust Agreements as well as ERISA. (*See* CBA Art. 18 ¶ 5; R. 106-1 at Art. 6.04; R. 106-2 at Art V. §§ 2, 3.); 29 U.S.C. § 1132(g)(D). Courtyard does not present any evidence or argument to the contrary. However, the plaintiffs have not indicated the amount of attorneys' fees that they believe they are entitled to. In this District, requests for attorneys' fees are subject to Local Rule 54.3, which requires parties to meet and confer regarding attorneys' fees prior to filing a fee motion. N.D. Ill. Local R. 54.3(d). Accordingly, the Court reserves ruling on this issue. Within 30 days of this order, the plaintiffs shall file a separate motion for attorneys' fees and costs consistent with Local Rule 54.3.

## CONCLUSION

For the reasons set forth in this memorandum opinion, the plaintiffs' motion for summary judgment is granted. Judgment is entered for the plaintiffs on their

claims for contributions under 29 U.S.C. § 1145 and 29 U.S.C. § 1132(g)(2)(A). Defendant Courtyard Healthcare Center, LLC is directed to pay (i) $85,992.90 to the Welfare Fund; and (ii) $46,408.96 in contributions to the Pension Fund, reflecting the amount of unpaid contributions as well as interest, liquidated damages, and audit fees owed to each Fund. The Court also finds that the plaintiffs are entitled to reasonable attorneys' fees under 29 U.S.C. § 1132(g)(2)(D). The parties are directed to comply with Local Rule 54.3 and submit a fee motion within 30 days of this judgment. It is so ordered.

Date: March 11, 2024

JEREMY C. DANIEL
United States District Judge